Staples, J.,
delivered the opinion of the court.
The plaintiff in error caused to be issued from the clerk’s office of Pittsylvania county a summons in the nature of a process of garnishment against the executors of Stephen Coleman, deceased. The object of the proceeding was to ascertain whether there was a liability on the part of the executors to Thomas S. Jones, who was debtor to the plaintiff', a grand-son of Stephen Coleman, and a devisee under his will. One of the executors appeared, and in behalf of his co-executor and himself, denied that there was any money or effects in his hands belonging to Thomas S. Jones. The plaintiff', suggesting the executor had not made a full disclosure, a jury was impanelled to enquire into the matter. The plaintiff in support of the issue on his.part, relied upon a settlement of the executorial accounts in the county court, from which it appeared that Thomas S. Jones was entitled to a legacy of $1,800 as of the 19th of February, 1874, from the estate of Stephen Coleman, and this fund the plaintiff sought to subject to the payment of his debt.
The executor was examined as a witness, and upon his examination he exhibited four bonds executed in .1858 and 1859, by Thomas S. Jones, to the testator, amounting in the aggregate to nearly $2,500, which he insisted was more than sufficient to absorb the legacy. He proved that these bonds had been inventoried as a part of the estate of Stephen Coleman, and since the death of the latter payment had been several times demanded of Jones. Ho other effort, however, had been made to collect the bonds. They had not been reported to either of the commissioners who settled the executorial accounts, nor had the executors accounted for them or their proceeds to the estate.
*786 Whether Thomas S. Jones ivas properly chargeable with the bonds depended to some extent upon a clause in the testator’s will, which provided that his children should not be “accountable tor any advancement for education or any other accounts whatever.”
Thomas S. Jones was the only descendant of a daughter of the testator, and upon her death was adopted, raised, and educated by the testator as a child, and so provided for in his will. And it was contended by the plaintiff that he was entitled to the benefit of this provision.
Another question arising was, whether the money for which the bonds were executed was to be considered an advancement to Thomas S. Jones, or as a loan for which he was liable to the estate. Upon this point evidence was adduced in the trial before the jury. It also appeared in the progress of the trial that the testator had been the guardian of Thomas S. Jones, and that his account, settled as far back as 1854 by a commissioner of the county court, showed a balance due the ward of more than $10,000. What had become of this debt the executor could not tell. He had no papers or vouchers showing it had been paid. It did not appear that Thomas S. Jones had ever asserted any claim to it. Whether the bequests in the will were to be regarded as a satisfaction of this claim, if it really existed: whether the money secured by the bonds was to be regarded as an advancement or a subsisting debt; and whether the provision in the will could properly apply to a granchild, were questions necessary to be passed upon and finally decided before it could be determined whether the plaintiff could subject the legacy to the payment of his debt. They were questions in which Thomas S. Jones and the other legatees were directly interested, and which in the nature of things could not finally be decided in their absence. It is too plain for argument that a court of law is not a proper tribunal for settling such questions; and it is a *787 matter of surprise that the circuit judge, upon the disclosure of these facts, did not at once arrest the entire proceeding, and require the plaintiff to proceed by bill in equity. But nothing of the kind was done—the case was proceeded in to a verdict in favor of the executors.
The question now arises, what is to be done by this court ? If we reverse the judgment and remand the case for a new trial, the result will be practically an attempted settlement of the executorial accounts before a jury in the absence of parties interested.
If we affirm, and it should hereafter appear, as it may, that Thomas S. J ones is entitled to the legacy, the plaintiff may be estopped to claim any part of it, notwithstanding he is a creditor whose debt is not questioned, whilst the debtor or his assignee in bankruptcy may appropriate the whole of the legacy. Possibly we might affirm the judgment without prejudice to the plaintiff. But the difficulty is that in so doing we necessarily decide that Thomas S. Jones, being a grandchild, is not included in the provisions contained in the will with respect to the advancements. The decision, of course, will not bind him, and this court may be hereafter called on to revise and reverse its own decision upon that very question.
Let it be conceded that the circuit court has- correctly construed the clause of the will already referred to. We are not entirely satisfied of the correctness of the decision with respect to the bonds executed by Thomas S. Jones to the testator.
It is somewhat remarkable that the executor in crediting him (Thomas S. Jones) with the legacy should not have charged him with the bonds. At the time of the death of the testator, in 1865, Jones was perfectly solvent, and so continued for several years thereafter; and no effort vras made to collect the money beyond a mere demand of payment. The amount of the bonds consid *788 erably exceeded the amount of the legacy, and there was no valid reason, so far as appears, for failing to collect . the excess. In none of the settlements made by the executors are the bonds charged or even referred to, and .nothing is ever heard of them until they were produced on the trial in 1874, and claimed as a satisfaction of the legacy. Upon this record it is difficult satisfactorily to determine how this matter stands, and it is most apparent that á court of equity is the only proper forum to close this controversy, where the necessary parties may be convened, the accounts settled, and the rights of all finally adjudicated. The learned counsel for the defendant insists, however, that the plaintifF having elected his. remedy must be held to it, and if the mode adopted of testing the liability of the executors was improper, it was a matter of objection .for them, and not for the plaintiff who instituted and prosecuted it. The rule which holds a party concluded by the decision of the tribunal whose jurisdiction he invoices, is of course a just one, but it is obvious that this rule cannot apply where the tribunal thus invoiced is precluded by its forms of proceeding from affording an adequate remedy. An illustration of this may be found in the case of Great Falls Manufacturing Co. v. Henry's adm'r, 25 Gratt. 575, and in the case of, Staples v. Turner, adm'r, 29 Gratt. 330, where the party being erroneously advised by his counsel his defence could only be made in a court of equity, confessed a judgment at law. Having been dismissed from the equity forum for want of jurisdiction, he was permitted, notwithstanding the judgment, to make the defence at law. In the present case it is plain the plaintiff was not entitled to succeed in any event; he was asserting a claim to a legacy in the name of his debtor, and could occupy no higher ground than the latter.
It is well settled that no action can be maintained at law for a legacy against the executor without an *789 express promise to pay. Ho admission of assets or mere acknowledgment will be sufficient; for without such promise the executor has a right to require a refunding bond, which a court of law cannot compel the creditor to give or the executor to receive. Kayser, ex'or, v. Desher, 9 Leigh, 357. The intention to waive the refunding bond must be clear. It will not be inferred from a mere assent to the legacy, because the executor may be willing to assent to a legacy, and even to hold it for the benefit of the legatee, and still not willing to part with the possession of it without a refunding bond. Nelson’s adm’r v. Cormoell, 11 Gratt. 724; Drake on Attachments, § 499; Daniel on Attachments, §§ 63, 226.
Throwing out of view all other difficulties in the way of settling fiduciary accounts in a court of law, the consideration just alluded to is sufficient to show that the plaintiff must have encountered an insuperable obstacle in maintaining this proceeding. If he had prevailed in the court helow, this court would have reversed the decision without hesitation. The suggestion is simply a means by which the creditor enforces a lien of his execution, and if his counsel advise him that a court of law is a proper tribunal for the assertion of his remedy, and if this court can see that the advice was palpably erroneous, its highest duty is so to make its judgment that the plaintiff may resort to a forum competent to administer proper relief. This can be effectually done in the present case by reversing the judgment of the court “ below, setting aside the verdict and dismissing the proceeding at the cost of the plaintiff.” The defendant, as the party substantially prevailing, is entitled to his costs in this court. So that he gains all that he would have by an affirmance of the judgment, and the plaintiff is permit *790 ted, without prejudice, to prosecute his remedies elsewhere.
The decree was as follows :
The court is of opinion, for reasons stated in writing and filed with the record, that the judgment of the said circuit court iá erroneous. It is, therefore, considered that the judgment aforesaid he reversed and annulled, and that the plaintiff in error, out of the estate of his intestate in his hands to he administered, pay to the defendant in error, as the party substantially prevailing, his costs by him expended in his defence here and in the said circuit court. And this court proceeding to render such judgment as the said circuit court ought to have rendered, it is further considered that the verdict of the jury be set aside, and that the proceedings upon the garnishee summons be dismissed, but without prejudice to the right of the plaintiff to assert his claim, if so advised, in a court of chancery, in accordance with the views expressed in said opinion.
Decree reversed.